**Affirmed and Memorandum Majority and Dissenting Opinions filed April 20, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00729-CV

---

## IN THE MATTER OF J.A.A., JR.

---

**On Appeal from the County Court at Law No. 4**
**Fort Bend County, Texas**
**Trial Court Cause No. 20-CJV-023528**

---

### MEMORANDUM MAJORITY OPINION

In this juvenile justice case, appellant argues in a single issue that his transfer order must be reversed because the juvenile court made a finding of fact that lacks evidentiary support. We conclude that the challenged finding is inaccurate, but we also conclude that the inaccuracy is immaterial. We therefore affirm the juvenile court's transfer order.

# BACKGROUND

When he was fifteen years old, appellant and one other juvenile entered a dollar store shortly before closing time and demanded money from the two employees who were still working there. Appellant threatened the employees with a BB gun, which the employees perceived as a real firearm. The employees complied with appellant's demands by emptying the cash register. The employees also entered a code for the store's safe, but the safe operated on a time delay and would not open until several minutes had lapsed.

Before the safe could open, a customer entered the store. Appellant handed the BB gun to the other juvenile and instructed him to detain the customer. The juvenile took the customer's phone, but the customer fought back, successfully retrieved her phone, and then ran out of the store. When appellant and the other juvenile chased after the customer, the employees locked the doors and called the police.

As it so happened, unmarked police units were already nearby because they were actively tracking the truck that appellant was using. The truck had previously been reported as stolen, and it was suspected in the commission of a series of other crimes, including a robbery where appellant's latent fingerprints had been found. The police followed the truck from the dollar store to another business, where they swooped in and made an arrest.

The State filed a petition in juvenile court, alleging two counts of robbery based on the incident at the dollar store (one count for each employee). The State also moved for the juvenile court to waive its exclusive jurisdiction and transfer appellant to criminal district court for him to be tried as an adult. The State's motion was heard eight months after the robbery, when appellant was sixteen years old.

The evidence at the hearing established that appellant had a troubled upbringing. He was exposed in utero to crack cocaine, and shortly after his birth, his mother left him to be raised by his adult half-sister.

The half-sister noticed that appellant had developmental delays, behavior problems, and learning difficulties. Appellant acted up in school and he was forced to repeat the first grade.

At the age of six, appellant began living with his father, who suffered from health problems. The father had abused crack cocaine for many years, and after recovering from that substance abuse, he developed lung cancer. The father's health gradually deteriorated, and the father died when appellant was twelve years old.

Appellant then began living with another adult half-sister, and despite her efforts to guide him on the right path, appellant started affiliating with gangs and engaging in criminal activity. He was charged at the age of twelve with evading arrest, a Class A misdemeanor. On a separate occasion, also at the age of twelve, he was charged with robbery, a second degree felony. When he was thirteen, he was charged with interfering with a public servant, a Class B misdemeanor. And between the ages of thirteen and fourteen, he was charged with five separate aggravated robberies, which are first degree felonies. For all of these charges, appellant was adjudicated delinquent and assessed various periods of probation.

At one point, appellant was sent to a juvenile detention center, where he received rehabilitative services for eight months, but he lapsed upon his discharge and continued to engage in criminal activity. He was also sent to two separate drug rehabilitation centers, but he was unsuccessfully discharged from both of them; one because of a verbal altercation with staff, and the other because he was caught smoking marijuana.

Appellant was placed in detention again following his most recent arrest after the dollar store robbery. In the eight months between his detention and the hearing on the State's motion to transfer, appellant received more than forty disciplinary referrals, mostly for insubordination, but also for some serious infractions. He made verbal threats against the staff. He also assaulted his peers and the staff with closed fists.

While appellant remained in detention, he was interviewed and tested by Dr. Tonya Martin, a clinical psychologist. Dr. Martin determined that appellant has an IQ of 74, which is not low enough to constitute an intellectual disability, though it is considered borderline.

After administering a personality test, Dr. Martin classified appellant as an "immature conformist," which means that he is likely to act as a follower, and that to gain acceptance, he would also be susceptible to gang activity. Using the same test, Dr. Martin further classified appellant as a "pragmatist" or "manipulator." These classifications indicate that appellant is likely to perceive the world in terms of power and control, and that he would misbehave in the form of deception or instigation as a means of outsmarting others.

Dr. Martin found that appellant had elevated scores on a violence test, which indicate that he has thoughts of mistrusting others, of justifying violent behavior, and of not needing others. These thoughts further indicate that appellant might experience relief or pleasure by engaging in violent behavior.

Based on appellant's various test results, his history of delinquency adjudications, and his "myriad" failed interventions, Dr. Martin opined that appellant has a low amenability to treatment and that he is at risk for reoffending. Dr. Martin recommended that appellant be placed in a highly structured environment capable of addressing his negative behaviors.

Dr. Martin did not specifically comment whether appellant should remain within the juvenile system and potentially be committed to the Texas Juvenile Justice Department (TJJD), or whether he should be certified as an adult and potentially be sent to the Texas Department of Criminal Justice (TDCJ). On the one hand, Dr. Martin acknowledged that a commitment with TJJD could both protect the public and provide the highly structured environment that appellant needs. On the other hand, Dr. Martin recognized that appellant could model himself after the violent behaviors of other juveniles at TJJD, which would have a negative impact on his development.

A second psychologist met with appellant at the urging of defense counsel. This psychologist agreed with the findings and recommendations of Dr. Martin, but he specifically discouraged the juvenile court from certifying appellant to be tried as an adult. He opined that appellant would likely benefit from a military residential program.

The juvenile court rejected the second psychologist's recommendation, certified appellant to be tried as an adult, and signed an order transferring appellant to criminal district court.

## ANALYSIS

The issue on appeal concerns a finding about the legal options that were available to the juvenile court. Before we address that finding, we first discuss the options that were explored during the hearing.

The first option, which the juvenile court actually chose, was transferring appellant to criminal district court, where he would potentially face confinement with TDCJ. Evidence at the hearing established that if appellant were tried as an adult and convicted while still a juvenile, he would be placed in TDCJ's youth

5

offender program. Under that program, juvenile offenders are kept completely isolated from adult offenders. Juvenile offenders attend school for the first half of the day, and for the remaining half, they receive cognitive intervention treatment like anger and stress management. Upon turning the age of eighteen, these offenders are discharged from the program, and then they transition over to the adult prison population.

The other options focused on dispositions within the juvenile system, where a juvenile offender would potentially face two types of commitments in TJJD. The first type is indeterminate sentencing. With this type of sentencing, the juvenile offender is not committed for any particular term of years or months. The juvenile offender receives rehabilitative treatment during the period of his commitment until TJJD determines that he is eligible for release, that he should be transferred to another facility, or that he has reached the age of nineteen, whichever occurs first.

The other type is determinate sentencing, in which the juvenile offender is committed for a fixed term of years or months. With this disposition, the juvenile offender receives credit for time served while in pretrial detention, and he is released when TJJD decides to parole him or when his term is completed. If the juvenile offender does not complete his determinate sentence before his nineteenth birthday, he is transferred to an adult facility within TDCJ. *See* Tex. Hum. Res. Code § 245.151.

To be eligible for a determinate sentence, the juvenile offender must have committed a particular offense that is enumerated by statute, or he must have engaged in habitual felony conduct. *See* Tex. Fam. Code § 53.045. Robbery is not one of the enumerated offenses, which means that appellant could only be eligible for a determinate sentence if he engaged in habitual felony conduct.

Habitual felony conduct is defined as conduct violating a penal law of the grade of felony, other than a state jail felony, if (1) the juvenile who engaged in the conduct has at least two previous final adjudications for engaging in felony delinquent conduct; (2) the second previous final adjudication is for conduct that occurred after the date that the first previous adjudication became final; and (3) all appeals relating to the previous adjudications have been exhausted. *See* Tex. Fam. Code § 51.031(a).

Appellant potentially met the requirements for a determinate sentence based on the commission of habitual felony conduct. The evidence showed that he is presently charged with two counts of robbery, which is a second degree felony, not a state jail felony. Also, his prior record includes a robbery adjudication from when he was twelve years old and several aggravated robbery adjudications from when he was thirteen and fourteen years old. The record does not affirmatively reveal whether appellant appealed those adjudications, but it does show that he pleaded true to each of them.

The State took the position during the hearing that appellant was ineligible for a determinate sentence solely because robbery is not one of the statutorily enumerated offenses. Even though a defense witness affirmatively indicated that appellant could be eligible based on the commission of habitual felony conduct, the State did not acknowledge that point or even attempt to negate it. Instead, the State suggested during closing arguments that the juvenile court had only two options: either keep appellant in the juvenile system, where he would be released no later than his nineteenth birthday under an indeterminate sentence, or transfer appellant to criminal district court, where he could potentially face a longer period of confinement. Defense counsel did not object to that argument.

The juvenile court rendered an oral ruling that it would waive its exclusive jurisdiction and transfer appellant to criminal district court. Certain oral findings were made in connection with this ruling, including one where the juvenile court determined that the likelihood of appellant's rehabilitation was "in doubt." The juvenile court did not orally indicate that appellant was ineligible for a determinate sentence, as the State had suggested during closing argument. In fact, the juvenile court did not comment at all about the option of determinate sentencing.

After making its oral ruling, the juvenile court instructed the State to prepare a written order with findings, which the juvenile court later signed. One of the findings stated as follows:

> Upon inquiry about services available to the Juvenile Court, including commitment to the Texas Juvenile Justice Department (TJJD), Dr. Martin reports that the services and treatment needs of [appellant] exceed the amount of time that he has available within the juvenile system, and acknowledges that under the current referrals a determinate sentence petition is not a legal option for the offenses of Robbery.

Appellant challenges this finding on the basis that "Dr. Martin offered no such testimony." We agree that the finding is inaccurate.

When Dr. Martin discussed determinate sentencing, she indicated that if appellant received a sentence of two years, which was the statutory minimum for a second degree felony, then appellant could be released from TJJD in about one year's time, given his pretrial detention credits. Dr. Martin doubted whether that duration would be enough to prevent appellant from reoffending. To that extent, the juvenile court's finding fairly states that the amount of time needed to meet appellant's treatment needs exceeds the amount of time that appellant would have within the juvenile system. However, Dr. Martin never testified that a determinate

8

sentence was not a legal option, and nothing in the record fairly supports that aspect of the juvenile court's finding.

Appellant now claims that the juvenile court's transfer order should be reversed because the finding indicates that the juvenile court did not properly consider all "procedures, services, and facilities" available to it, which must be done before a juvenile court exercises its discretion to waive its exclusive original jurisdiction. *See* Tex. Fam. Code § 54.02(f)(4).

The State has a response to this argument, but the response does not include a recognition that the juvenile court made an inaccurate recitation of Dr. Martin's testimony. Instead, the State counters that appellant could not have received a determinate sentence because the State did not seek such a disposition. The State did not make this argument during the hearing below, but nevertheless, we conclude that the argument is correct.

In addition to the eligibility requirements discussed above, a juvenile offender cannot receive a determinate sentence unless (1) the State refers a petition to the grand jury, (2) the grand jury approves the petition and certifies its approval, and (3) the grand jury's certification is entered into the record. *See* Tex. Fam. Code § 53.045. Without these prerequisites, the juvenile court has no authority to impose a determinate sentence. *See In re D.G.*, No. 03-12-00455-CV, 2014 WL 3732930, at *3 (Tex. App.—Austin July 23, 2014, no pet.) (mem. op.) (citing *In re J.G.*, 195 S.W.3d 161, 180 (Tex. App.—San Antonio 2006, no pet.)).

The record does not affirmatively reveal that any of these three prerequisites has been satisfied. Therefore, we conclude that the challenged finding was legally correct insofar as it stated that a determinate sentence was not an available option for the juvenile court. Because we also presume that the juvenile court was aware of the law, we further conclude that the finding's inaccurate attribution to Dr. Martin is

immaterial, and that appellant has not shown that the juvenile court failed to consider all procedures, services, and facilities that were available to it. *See Walton v. Arizona*, 497 U.S. 639, 653 (1990) ("Trial judges are presumed to know the law and to apply it in making their decisions."), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

## CONCLUSION

Because the juvenile court's inaccurate finding of fact does not impact the analysis of whether the juvenile court properly considered all of its available legal options, we overrule appellant's sole issue and affirm the juvenile court's transfer order.

/s/    Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Spain and Wilson. (Spain, J., dissenting).